**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **FERNANDO VALDEZ** | § | |
| | § | |
| **V.** | § | **A-15-CA-40-LY** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Dept. of Criminal Justice–** | § | |
| **Correctional Institutions Division** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
         UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court
pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United
States District Court for the Western District of Texas.

Before the Court are Petitioner Fernando Valdez's Application for Habeas Corpus Relief
under 28 U.S.C. § 2254 (Document 1); Valdez's Brief in Support (Document 1-1) Respondent's
Answer (Document 7); and Valdez's response thereto (Document 8).  Valdez, represented by
counsel, has paid the filing fee for his application.  For the reasons set forth below, the undersigned
finds that Valdez's application for writ of habeas corpus should be denied.

**STATEMENT OF THE CASE**

**A.      Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Valdez pursuant to
a judgment and sentence of the 147th District Court of Travis County, Texas, in cause number
D-1-DC-10-300009.  Valdez pleaded guilty to two counts of aggravated robbery with a deadly
weapon, in exchange for which the State dropped one charge of engaging in organized criminal

activity.  The trial court sentenced Valdez to twelve years' imprisonment for each aggravated robbery

charge, to be served concurrently.  Valdez did not appeal his sentence.

On October 30, 2012, Valdez filed a state application for habeas corpus relief challenging

his conviction.  The trial court recommended the application be denied.  The Texas Court of

Criminal Appeals denied the application without a written order on the trial court's findings.  *Ex*

*parte Valdez*, WR-81,075-01 (Tex. Crim. App. Aug. 6, 2014).

**B.    Factual Background**

The state court in Valdez's habeas corpus proceedings summarized the facts of this case:

About 5:45pm on November 22, 2009, a masked Hispanic man jumped out of a black Suburban and ran up to a woman who had just parked her Tahoe,[1] demanding her car keys and displaying a handgun.  He fired a shot into the air when she did not move fast enough to please him, then drove off in her car when she gave him the keys.  The Tahoe had custom wheel rims.  Officers recovered a spent 9mm Winchester shell casing at the scene.

Just before midnight that night a Hispanic man jumped out of a blue Suburban and approached a man at his parked Tahoe, demanding his keys.  The assailant fired a shot in the air, then drove off with the victim's car.  This car also had custom wheel rims, and another spent 9mm Winchester shell casing was found at this scene.  The next day the first Tahoe was found on fire, abandoned and partially stripped.

About a month later a police sergeant stopped another Tahoe for a traffic offense and noted that its wheel rims matched those taken in the first robbery.  The Tahoe was towed to the APD service center, and the victim's husband identified his driver's license number etched into the wheel rims.  Applicant was the only occupant of this Tahoe when it was stopped.  Applicant identified two associates as the robbers, claiming he had just helped strip the cars, and had been given the rims for his help.  However, he provided details which the officer believed only the robber would know.

---

[1] There is some dispute in the record whether this car was a Tahoe or a "GMC Yukon Denali."  *See* Doc. 6-1, Affidavit of Rene Vargas, at 1.

2

Officers verified applicant's report that one associate, Galvan, had bought a Suburban the day before the robberies.  Three days later Galvan was arrested for traffic offenses, and admitted he was involved in the robberies with applicant and the other man, but claimed he was just the driver, and that applicant was the actual robber.  Tail lights from the second robbery were on Galvan's Suburban.

About two years later applicant was found in possession of a camera and its accessories which had just been stolen from a car about a mile away.  During his arrest for this burglary and theft applicant made a verbal threat to one of the arresting officers.

Applicant subsequently agreed to plead guilty to these instant robberies in exchange for dismissal of all the other charges and assessment of a sentence of ten years.  However, applicant did not appear for this plea setting, and that plea offer was withdrawn.

Doc. 6-2, Findings of Fact, Recommendation, and Order, at 172–73.[2]

**C.    Petitioner's Ground for Relief**

Valdez raises only one ground for relief.  He asserts his counsel performed ineffectively because he gave incorrect advice regarding Valdez's eligibility for probation.

**D.    Exhaustion of State Court Remedies**

Respondent does not dispute that Valdez has exhausted his state court remedies regarding the claims brought in this application.

**DISCUSSION AND ANALYSIS**

**A.    The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.  *See Harrington*

---

[2] The pages cited in Document 6-2 throughout refer to the electronic document number at the top of the page of the document.

*v. Richter*, 562 U.S. 86, 97–100 (2011).  The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.*  Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted).  The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).  When there is no explanation with a state-court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.*  And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that

decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Harrington*, 562 U.S. at 100 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740–41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28

U.S.C. § 2254(e)(1).  But absent such a showing, the federal court must give deference to the state court's fact findings.  *Id.*

**D.  Ineffective Assistance of Counsel**

In his only ground for relief, Valdez argues that he was denied effective assistance of counsel. Valdez raised this same issue in his state application for habeas corpus relief.  The Court of Criminal Appeals rejected the merits of Valdez's claim.  As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Valdez's claim by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.  In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential.  *Id.* at 686–89.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. *Id.* at 695–97. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687.

Valdez asserts his counsel was ineffective for incorrectly advising him regarding his plea of guilty and how that plea would affect his eligibility for probation. Valdez asserts in his petition, and in an affidavit filed in his state habeas corpus proceedings, that his attorney incorrectly told him he would be eligible for "shock probation." That advice, Valdez insists, encouraged him to plead guilty, though the State had a weak case. He says he would not have entered the plea had he known probation was not an option.

Valdez supports his argument with affidavits from himself, his mother, his father, and his first trial counsel. Collectively, those affidavits assert Valdez's second trial counsel—Armando Martinez, who counseled Valdez to plead guilty—was untrustworthy, unconcerned about Valdez, and unaware of the law and Valdez's ineligibility for probation if he pleaded guilty. The state court in Valdez's state habeas corpus proceedings did not make any factual findings regarding the authenticity of the affidavits because, the court concluded, the affidavits showed only that Martinez

7

may have misadvised Valdez's mother *after* he had pleaded guilty regarding Valdez's eligibility for shock probation.   But, the court found, the affidavits did not demonstrate Valdez was given erroneous legal advice that led him to plead guilty; instead, it was Valdez's numerous pending charges, possession of the stolen wheel rims, and risk of testimony from his codefendants that encouraged him to take the plea offer.  Doc. 6-2 at 173.  Valdez relies on the affidavits to create his statement of facts, but he has done nothing to defeat, by clear and convincing evidence, the presumption that the state court's factual findings were correct.  *See* 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

Transcripts from state-court hearings during Valdez's plea negotiations bolster the state court's conclusion.  At a status hearing, the court admonishes Valdez that the punishment range is 5 years to 99 years or life, of which Valdez would have to serve at least half.  Doc. 6-2 at 48.  Valdez says he understands the range of the penalty.  *Id.* at 50–51.  There is no discussion or mention whatsoever of probation or the possibility or option of probation.   Nor is there any mention of probation on the plea agreement Valdez signed.  Doc. 6-1, Plea of Guilty.  At his plea hearing and sentencing, Valdez agrees that he is pleading guilty because he is guilty.  Doc. 6-2 at 106.  He agrees that, aside from the State's offer of 12 years' imprisonment, no one had promised him anything in exchange for his plea, and no one forced or threatened him into pleading guilty.  *Id.* at 109.  He never asks the court about probation or suggests his attorney told him he would be eligible for probation by pleading guilty.

There is nothing in the state record, outside of the affidavits from Valdez and his parents, to suggest attorney Martinez told Valdez he was eligible for shock probation or that the possibility of probation is what led Valdez to enter his plea.  Because there is no evidence counsel erroneously

8

advised Valdez regarding his eligibility for probation, the state court properly concluded Valdez had not shown his attorney's performance was deficient.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

## RECOMMENDATION

It is recommended that Valdez's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's

underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## <u>OBJECTIONS</u>

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 1st day of October, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE